IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISTRICT COUNCIL 16 NORTHERN CALIFORNIA HEALTH AND WELFARE TRUST FUND, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CONESCO, INC.,<br><br>    Defendant | Case No.: 12-4709 JSC<br><br>**ORDER REASSIGNING CASE TO DISTRICT JUDGE; REPORT AND RECOMMENDATION THAT PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT BE GRANTED** |

In this enforcement action brought under the Employee Retirement Income Security Act ("ERISA"), Plaintiffs bring a Motion for Default Judgment ("Motion") seeking entry of default judgment, an award of outstanding employee benefit contributions, liquidated damages and interest, attorney's fees and costs, and an injunction requiring Defendant to submit to an audit of its books and records. The Court finds that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7–1(b). Because the Court has not obtained consent from Defendant pursuant to 28 U.S.C. § 636, it ORDERS the case reassigned to a District Judge. For the reasons given below, the court recommends that Plaintiffs' Motion be GRANTED.

**BACKGROUND**

Plaintiffs in this action comprise the following trust funds ("Trust Funds"): 1) The District Council 16 Northern California Health and Welfare Trust Fund ("Health Fund"), its Joint Board of Trustees, and Doug Christopher as Trustee; 2) District Council 16 Northern California Apprentice & Journeyman Training Trust Fund ("Apprentice Fund"), Doug Christopher as Trustee; 3) Resilient Floor Covering Pension Fund ("Resilient Pension Fund"), its Board of Trustees, and Steve Havens as Trustee; 4) Central Coast Counties Floor Covering Industry Pension Fund ("Central Pension Fund"), its Board of Trustees, and Steve Havens as Trustee.[1]

Defendant, an employer within the meaning of ERISA Section 3(5) and 29 U.S.C. § 1002(5), is a signatory to the Northern California Floor Covering Master Agreement ("CBA") between the District Council 16 and Floor Covering Association Central Coast Counties. (Dkt. No. 1 ¶¶ 4-5.) The CBA incorporates the relevant trust agreements ("Trust Agreements"), establishing each of the Trust Funds. (*Id.* at ¶ 14.) The Trust Agreements incorporated into the CBA require Defendant to make regular contributions to the Trust Funds, who are third party beneficiaries of the CBA, based on the hours worked by Defendant's employees. (*Id.*) Defendant further agreed to pay liquidated damages for each delinquent contribution; specifically, liquidated damages incur at 20% of the delinquent contributions, but in the event an employer pays its delinquent contributions prior to the filing of a lawsuit, liquidated damages are only 10% and may not exceed $750. (*See* Dkt. No. 19, Ex. C at Art. III § C(2).) In addition, interest accrues on the delinquent contributions at the rates reasonably set by the Trustees from the first day of the month following the month in which payments are due. (*See id.* at C(3).)

The Complaint, filed September 10, 2012, alleges that Defendant has failed to pay contributions due for work performed by its employees during the months of September 2011 through January 2012, March 2012, and May 2012. (Dkt. No. 1 at ¶ 19.) In addition, Defendant has failed to report or pay contributions for the months of April 2012, June 2012, and July 2012 for its

---

[1] District Council 16 of the International Union of Painters and Allied Trades ("Union") is also a party; however, the Union "is represented by counsel herein for the limited purpose of collecting union dues owing as part of the subject contribution claims of Plaintiffs, and not for any other cause of action." (Dkt. No. 1 ¶ 3.)

2

account number 0000-000750-05 ("Account 1"). (*Id.*) Defendant has also failed to report and pay contributions for the months of December 2011, and March 2012 through July 2012 for its account number 0000-000750-00 ("Account 2").[2] (*Id.*)

Defendant failed to answer or otherwise appear and Defendant's default was entered by the Clerk pursuant to Rule 55(a) of the Federal Rules of Civil Procedure on November 15, 2012. (Dkt. No. 7.) Plaintiffs filed the present Motion on March 7, 2012. In the Motion, Plaintiffs request: 1) an order directing Defendant to pay $120,541.85 in unpaid contributions, liquidated damages, and interest;[3] 2) an order requiring that Defendant submit to an audit; 3) an award of attorney's fees in the amount of $5,636.50, costs in the amount of $1,036.40, and "additional attorney's fees" in the amount of $1,100.00;[4] and 5) for the Court to retain jurisdiction. (Dkt. No. 18 at 1-4.) Plaintiffs served Defendant with the Motion by mail. Defendant has not appeared or responded to the Motion, and the deadline for opposing the motion has passed. *See* Civil L.R. 7-3(a).

## DISCUSSION

### I. Jurisdiction and Service of Process

When a court is considering whether to enter a default judgment it has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has subject matter jurisdiction pursuant to 29 U.S.C. § 185 (granting labor union organizations power to sue employers in Federal court) and § 1132 (empowering ERISA plan fiduciaries to bring civil actions to enforce plan terms). The Court has personal jurisdiction because Conesco is a California corporation that engages in business activities in the Northern District of California.

---

[2] Although Plaintiffs' delineation between Account 1 and Account 2 suggests that there are two separate missed payments for certain months (i.e., December 2011 and March 2012 through July 2012), the spreadsheets provided by Plaintiffs are identified as representing those amounts due for only Account 1. (*See* Dkt. No. 18 at 1-2; Dkt. No. 19, Ex. E.) The amounts owed under Account 2 are not present anywhere in Plaintiffs' filings. The Court therefore cannot award any amount owing under that account.

[3] Plaintiffs' Motion seeks payment for additional months following the filing of this action in which Defendant has failed to make contributions; those months are August 2012 through January 2013.

[4] Plaintiffs state that these additional fees are "estimated in connection with additional filings in this matter, preparation and attendance at hearing on Motion." (Dkt. No. 18 at 3.)

A court is also required to "assess the adequacy of the service of process on the party against whom default is requested." *Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters*, No. 00–0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Federal Rule of Civil Procedure 4(e) provides that service in accordance with California law is proper. Under California law, a corporation may be served by delivering a copy of the summons and of the complaint to the person designated as agent for service of process. *See* Cal. Civ. P. Code § 416.10(a). Here, Defendant's agent for service of process was personally served with the Summons and Complaint. (Dkt. No. 5.)

## II.      Default Judgment

After entry of default, a court may grant default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. The factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A court should consider the following factors in determining whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The majority of the *Eitel* factors support default judgment. First, if the Motion were to be denied, then Plaintiffs would likely be left without a remedy given Defendant's failure to appear or otherwise defend this action. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Second, because Defendant has not answered the Complaint or otherwise appeared in this action, the possibility of a dispute concerning material facts is unknown. Third, Plaintiffs properly served Defendant and there is no evidence in the record that Defendant's failure to appear and otherwise defend this action was the result of excusable neglect. Fourth, the sum of money being sought by Plaintiffs is reasonable in that it is tailored to the specific misconduct of Defendant; namely, Defendant's failure to pay the contributions, which it had assumed responsibility for under

4

the CBA. *See Pepsico*, 238 F. Supp. 2d at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). Finally, although the seventh *Eitel* factor, which favors decisions on their merits, weighs against default judgment, the Court finds that this factor is not dispositive.

Having determined that on balance the *Eitel* factors discussed above support Plaintiffs' Motion, the Court turns to the merits of Plaintiffs' substantive claims and the sufficiency of the evidence (the second and third *Eitel* factors). These factors essentially require Plaintiffs to state a claim on which it may recover. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Plaintiffs have adequately stated a claim for relief.

Plaintiffs claim that Defendant violated ERISA section 515 by failing to provide timely payments and reports pursuant to the CBA. These allegations are sufficient to state a claim under Federal Rule of Civil Procedure 8(a). The claims are further substantiated by the factual record. As discussed above, Plaintiffs have offered evidence that Defendant entered into the CBA. The CBA, through the Trust Agreements, imposes liability on delinquent employers for liquidated damages, unpaid interest and attorney's fees in addition to any unpaid contributions. Plaintiffs' Complaint alleges that Defendant has failed to pay contributions due for work performed by its employees during the months of September 2011 through January 2012, March 2012, and May 2012. (Dkt. No. 1 at ¶ 19.) In addition, Defendant has failed to report or pay contributions for the months of December 2011, April 2012, March 2012 through July 2012. (*Id.*) Plaintiffs provided a detailed accounting of liquidated damages and attorneys' fees incurred by Defendant in support of the Motion. (*See* Dkt. No. 18 at 1-2; Dkt. No. 19, Ex. E.) Accepting all factual allegations as true, Plaintiffs have stated a claim for relief.

Defendant breached its agreement with Plaintiffs when it failed to report or pay contributions for the periods listed above. Defendant's default triggered the filing of the instant suit for recovery, in response to which Defendant has taken no action. Based on the foregoing, it should be found that Plaintiffs are entitled to default judgment on this claim. Next, the Court must consider what constitutes an appropriate remedy in this case.

### III. Damages, Attorney's Fees, and Audit

Once a court has determined default liability, the plaintiff must then establish that the requested relief is appropriate. *See Geddes*, 559 F.2d at 560. Under ERISA, an employee benefit plan that obtains judgment in its favor in an action under 29 U.S.C. § 1132 shall be entitled to the following forms of relief: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages, not in excess of 20 percent of the unpaid contributions; (4) reasonable attorney's fees and costs; and (5) other legal or equitable relief in the discretion of the court. *See id.* § 1132(g)(2) (stating that the court "*shall* award" these types of relief) (emphasis added). The Court must use its discretion and consider Plaintiffs' requested relief in light of the statute.

#### A. Damages

Plaintiffs seek to recover unpaid contributions for the following months: September 2011 ($25, 220.01); October 2011 ($19,149.29); November 2011 ($17,942.39); December 2011 ($18,406.27); January 2012 ($3,615.73); March 2012 ($3,298.30); April 2012 ($3,928.30); May 2012 ($547.29); June 2012 ($547.29); July 2012 ($547.29); August 2012 ($547.29); September 2012 ($547.29); October 2012 ($547.29); November 2012 ($547.29); December 2012 ($547.29); January 2013 ($547.29).[5] Although some of the contributions were incurred after the filing of this lawsuit, the Court may award Plaintiffs those delinquent contributions along with those unpaid contributions incurred prior to the action. *See Local 81 v. Wedge Roofing*, 811 F. Supp. 1398, 1401-02 (N.D. Cal. 1992); *see also Bay Area Painters v. Alta Specialty*, 2008 WL 114931, at *4 (N.D. Cal. Jan. 10, 2008) ("Courts in the Ninth Circuit have made a limited exception to [the requirement that default judgment be constrained by the remedies sought in the complaint] for delinquent contributions that come due *after* a complaint is filed on the basis that such an approach is consistent with the legislative intent underlying ERISA.") (emphasis in original). Plaintiffs have adequately documented the amounts of the delinquent contributions and therefore the amounts requested should be awarded in full.

---

[5] For those months where Defendant failed to provide a report, Plaintiffs, pursuant to the CBA, seek contributions at the amount due from the last complete report filed by Defendant. (*See* Dkt. No. 19, Ex. C at Art. III § A.)

6

Regarding liquidated damages, Plaintiffs seek liquidated damages for each of the monthly unpaid contributions listed above at a rate of 20%. Section 1132(g)(2) provides Plaintiffs with liquidated damages and interest as a matter of right on delinquent, unpaid contributions, but the liquidated damages must be equal to or less than 20% of unpaid contributions. 29 U.S.C. § 1132(g)(2); *see also Bd. of Trs. of Laborers Health and Welfare Trust Fund for N. Cal. v. Atoll Topui Island, Inc.*, 2007 WL 174409, at *7 (N.D. Cal. Jan. 22, 2007). ERISA requires an award of liquidated damages if "(1) the fiduciary obtains a judgment in favor of the plan, (2) *unpaid* contributions exist at the time of suit, and (3) the plan provides for liquidated damages." *Idaho Plumbers and Pipefitters Health and Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989) (emphasis in original). Plaintiffs have satisfied all three *Idaho Plumbers* factors. First, by virtue of this order, the fiduciary has obtained judgment in favor of the plan; second, Plaintiffs allege that all the contributions remain unpaid; and third, the CBA provides for assessment of liquidated damages at twenty percent if payment is not made prior to litigation. Because the Court concludes that the requested liquidated damages are correctly calculated and well supported, the undersigned recommends that they be granted in full.

In addition, the Court concludes that Plaintiffs have adequately supported their request for interest on the unpaid contributions at a rate of 5% per annum. The CBA provides that a reasonable interest rate may be determined by the Trustee; the Board of Trustees most recently set the interest rate at 5% per annum. (*See* Dkt. No. 19 ¶¶ 6-7.) Courts in this District have previously upheld much higher contractual interest rates in ERISA defaults. *See, e.g., Bd. of Trs. v. KMA Concrete Constr. Co.*, 2011 WL 7446345, at *5 (N.D. Cal. Dec. 20, 2011) (1.5% monthly interest); *Bd. of Trs. of Laborers Health and Welfare Trust Fund for N. Cal. v. Perez*, 2011 WL 6151506, at *10 (N.D. Cal. Nov. 7, 2011) (1.5% monthly interest); *Atoll Topui Island*, 2007 WL 174409, at *9 (18% annual interest). The undersigned accordingly recommends that Plaintiffs be awarded their requested interest in full.

In sum, under the terms of the CBA as well as ERISA, Defendant is obligated to report and pay regular contributions and may be liable for liquidated damages and interest on any and all delinquencies. Defendant's failure to report or pay the contributions is a breach of the CBA and a

violation of ERISA § 515, 29 U.S.C. § 1145.  The undersigned therefore recommends that Plaintiffs' request for $120,541.85 in unpaid contributions, liquidated damages, and interest be granted in full.

### B. Attorney's Fees and Costs

Where a party is entitled to reasonable attorney's fees by either contract or statute, the court will determine the amount to be awarded based on reasonable billing rates and time spent.  *See Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987) (referring to this quantum of reasonableness as the "lodestar").   ERISA also provides for recovery of reasonable attorney's fees and costs within the discretion of the Court.  29 U.S.C. § 1132(g)(2)(D).

Pursuant to the CBA, Defendant agreed to pay reasonable attorney's fees, auditor's expenses, and costs associated with a default.  (Dkt. No. 19, Ex. C at Art. III § E.)  Plaintiffs' Motion requests $5,636.50 in attorney's fees.  To substantiate their fees and costs, Plaintiffs' counsel included a declaration detailing the fees.  (Dkt. Nos. 19 ¶ 17.)  The amount of fees is based on work performed by Muriel B. Kaplan (4.4 hours at $215.00 per hour), Blake E. Williams (9.7 hours at $205.00 per hour), Shivani Nanda (6.8 hours at $205.00 per hour), and 10.9 hours of paralegal work at $120.00 per hour.  (*Id.*)  The Court concludes that the time incurred and billing rates are both reasonable.  Plaintiffs' counsel further requests $1,100 in "additional" attorney's fees that it estimates will be incurred after the execution of the declaration accompanying the Motion.  Specifically, Ms. Kaplan requests four additional hours ($860) for preparation, attendance, and travel to and from the hearing on the Motion; two additional paralegal hours ($240) are estimated to be incurred finalizing, electronically filing, and serving the Motion.  Because the Court is vacating the hearing on Plaintiffs' Motion, the Court concludes that Plaintiffs' request for fees related to the hearing is moot.  The Court does conclude that the two additional paralegal hours are justified and recommends that they be awarded.  The undersigned accordingly recommends that Plaintiffs' request for attorney's fees be awarded in the amount of $5,876.50, reflecting an $860 reduction.

Plaintiffs' cost request of $1,036.40 includes costs for filing fees ($350.00), personal service ($175.00), and an "investigative" fee ($511.40).  (Dkt. No. 19 ¶ 19.)  Under Civil Local Rule 54–3, an award of costs may include the clerk's filing fee and fees for service of process "to the extent reasonably required and actually incurred."  In addition, the CBA provides for the recovery of all

expenses incurred in collection.  (*See* Dkt. No. 19, Ex. C at Art. III § E.)  Therefore, it is recommended that all costs be awarded in full.

### C. Audit and Continuing Jurisdiction

Plaintiffs also "seek a determination that Plaintiffs are entitled to conduct an audit of Conesco's records to determine contributions owed to the Trust Funds, and an Order that Defendant comply with such audit upon Plaintiffs' request."  (Dkt. No. 18 at 1.)  "Where a collective bargaining agreement, as here, gives Trustees of an employee benefit plan the right to audit an employer's books and records, it will be enforced."  *Cal. Drywall/Lathing Indus. Labor-Mgmt. Cooperation, Inc. v. MLR Drywall Servs. Inc.*, 2010 WL 519827, at *6 (N.D. Cal. Jan. 19, 2010) (citing *Cent. States Se. & Sw. Areas Pension Fund v. Cent. Transp. Inc.*, 472 U.S. 559 (1985); *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491 (9th Cir. 1990)).

Defendant expressly agreed to submit to an audit to ensure compliance with the CBA.  (Dkt. No. 19, Ex. C at Art. III § D.)  Specifically, Defendant agreed that

> "[u]pon notice in writing, an Employer must permit an authorized Trust representative to enter upon the premises of such Employer at a mutually agreeable time during regular business hours to examine and copy such records as may be necessary to determine whether the Employer is making full and prompt payment to the Trust of all sums required. . . . The records to be made available to the Joint Board, or its representative, shall include, but not be limited to, time cards, payroll journals, payroll checks registers, canceled payroll checks, copies of the Employer's federal, state and local payroll tax reports, federal and state income tax returns, cash disbursement journals, and all other documents reflecting the hours and wages of employees (whether or not such documents are privileged).

*Id.*  Defendant also agreed to pay all contributions due and owing by virtue of said audit, as well as auditor's fees and costs.  (*Id.*)  The Complaint gave Defendant notice that Plaintiffs were seeking compliance with its audit request, and that Defendant would be expected to pay further past-due amounts discovered by the audit.  (*See* Dkt. No. 1 at *8.)  Nonetheless, Defendant still failed to appear or otherwise defend itself in this action.  Therefore, Plaintiffs are entitled to conduct an audit and demand payment of properly substantiated additional delinquencies.  The Court recommends that Defendant be ordered to comply with its obligation to allow an audit of its records within twenty-one calendar days of the date of personal service of any judgment.  The Court also

9

recommends that the District Court retain jurisdiction over this matter pending a timely audit to amend the judgment upon a proper showing by Plaintiffs.  *See, e.g., Bd. of Trs. v. KMA Concrete Constr. Co.*, 2011 WL 7446345, at *6 (N.D. Cal. Dec. 20, 2011) (retaining jurisdiction to account for further delinquencies discovered by an audit after proper showing by the plaintiff); *Bd. of Trs. v. RBS Washington Blvd, LLC*, 2010 WL 145097, at *6-7 (N.D. Cal. Jan. 8, 2010) (same).  Attached to this Order is a recommended judgment.

## CONCLUSION

Based on the foregoing, the Court recommends that Plaintiffs' Motion for Default Judgment (Dkt. No. 18) be GRANTED.  The Court recommends that judgment be entered in favor of Plaintiffs, and that Plaintiffs be awarded a total of $120,541.85 in unpaid contributions, liquidated damages, and interest, $5,876.50 in attorney's fees, and $1,036.40 in costs.  The Court also recommends that the judgment order Defendant to submit to an audit of its books and records within twenty-one days of personal service of the judgment and pay additional delinquencies discovered thereby as well as auditor's fees and costs.  The Court further recommends that the District Court retain jurisdiction over this matter during the audit such that Plaintiffs can move the District Court to amend the judgment and include additional amounts due and owing.

Plaintiffs shall serve a copy of this report and recommendation on Defendant within three days from the filing date of this report and recommendation and shall file a proof of service with this Court.

Any party may file objections to this report and recommendation with the district court judge within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.  Failure to file objections within the specified time may waive the right to appeal the District Court's ultimate Order.

**IT IS SO ORDERED.**

Dated:  April 12, 2013

_Jacqueline S. Corley_
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE